# EXHIBIT 23

# Report of Expert Jeffrey Eiser

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA SUE SMITH, Deceased,
By SUETTA SMITH, Personal
Representative of the Estate of
Brenda Sue Smith, Deceased,

Case No. 2:09 cv 10648
Hon. David M. Lawson
Mag. Michael Hluchaniuk

Plaintiff,

V

COUNTY OF LENAWEE, a Municipal Corporation
SHERIFF LAWRENCE RICHARDSON, Jr.,
SGT. PAUL DYE; SGT. J. CRAIG; OFF. WENDY
VANDERPOOL; OFF. BERNICE BAKER;
OFF. ADAM ONDROVICK; DR. JEFFREY STICKNEY, D.O.;
SGT. MARY NEILL; OFF. ERIC WESTGATE,
in their individual and official capacities.

Defendants,

_____/

KENNETH D. FINEGOOD P36170
KENNETH D. FINEGOOD, P.L.C.
Attorney for Plaintiff
29566 Northwestern Hwy, Suite 120
Southfield, MI 48034
248-351-0608
Fax: 248-359-2997

JAMES W. BODARY (P24193)
SIEMION HUCKABAY
Attorney for Defs. Lenawee County,
Richardson Dye, Craig, VanderPool, Baker,
Ondrovick, Neill and Westgate
One Towne Square, Suite 1400
PO Box 5068
Southfield, MI 48086-5068
248 357-1400
248 357 3343 fax

MICHAEL W. STEPHENSON (P48977)
DAVID M. NELSON (P69471)
Willingham & Cote', P.C.
Attorney for Def. Stickney
333 Albert Ave
Ste. 500
East Lansing, MI 48823

## AFFIDAVIT OF JEFFREY EISER

State of Ohio      }
                   } SS
County of          }

I, Jeffrey Eiser, being duly sworn depose and say that if sworn as a

2:09-cv-10648-DML-MJH Doc # 106-23 Filed 05/10/10 Pg 3 of 19 Pg ID 2248

witness I will competently testify to the contents of my report dated December 8, 2009 attached hereto and incorporated herein.



Jeffrey Hiser

Subscribed and sworn to before me
This 07 day of May, 2010.

_____
Notary Public
_____ County, ~~Michigan~~
My Commission Expires: 04/17/2013

CHRIS LEE CORTEZ
NOTARY PUBLIC
State of Texas
Comm. Exp. 04/17/2013

# JEFF EISER
*CRIMINAL JUSTICE CONSULTANT AND*
*JAIL OPERATIONS EXPERT*

---

December 8, 2009

Attorney Kenneth Finegood
29566 Northwestern Highway
Suite 120
Southfield, Michigan 48034

RE: Brenda Sue Smith, deceased, et al. vs. County of Lenawee, et al.
United States District Court for the Eastern District of Michigan – Southern Division
Case No: 2:09-cv-10648-DML-MJH

Dear Mr. Finegood,

I have completed my initial review of the documents and materials provided to me concerning the above action (the documents and materials reviewed are listed in Appendix A). Based upon my education, experience, training and the professional standards for jails, I render the following preliminary opinions within a reasonable degree of professional certainty. I reserve the right to update and modify my opinions if additional information or materials become available:

1. The failure of the Lenawee County (Michigan) Jail, Sheriff Lawrence Richardson, Jr. and the jail administration to have a policy, procedure or protocol to direct staff in the care of inmates exhibiting acute chemical intoxication and withdrawal violates clearly established corrections industry standards and practices.

2. The failure of the Lenawee County (Michigan) Jail, its administration and staff to take corrective action and provide prompt access to adequate medical care for inmate Brenda Smith, after it became obvious that her serious medical condition was deteriorating, indicates deliberate indifference to her serious medical needs and violates clearly established corrections industry standards and practices.

3. The Lenawee County (Michigan) Jail, its administration and staff violated clearly established corrections industry standards and practices, and acted with deliberate indifference to the safety of inmate Brenda Smith by failing to take corrective action after it became obvious that her serious medical condition was deteriorating.

4. The failure of Lenawee County (Michigan) Jail staff to appropriately respond to the obvious serious medical needs of inmate Brenda Smith indicates a lack of adequate training and direction by the Lenawee County Sheriff's Department and Sheriff

Lawrence Richardson, Jr. and is in violation of clearly established corrections industry standards and practices.

5. The policy and practice of the Lenawee County Jail and Sheriff Lawrence Richardson, Jr. of using untrained corrections officers to make initial medical assessments and referrals on inmates violates clearly established corrections industry standards and practices.

Other than on the facts of this case, and nationally recognized corrections industry standards and practices, my opinions are based on 29 years of practical operational and administrative experience in a large urban jail system consisting of four facilities, an average daily population of over 2300 inmates and annual intake of over 48,000 new inmates per year. I recently retired as the Deputy Director of Corrections for the Hamilton County Sheriff's Office in Cincinnati, Ohio. My practical work experience includes years as a security supervisor, full-time training commander, 20 years of policy and procedure research and writing, and 19 years as a top Corrections Administrator.

I have served since 1994 as a consultant and expert witness on jail operations and staffing, staff negligence, inmate assault (failure to protect), staff use-of-force, Corrections Emergency Response Teams (CERT), prisoner medical care and standards, in custody deaths, inmate suicide, sexual assault by staff/other prisoner, conditions of confinement, inmate supervision, prisoner classification and housing, strip/body cavity searches, accommodations for disabled prisoners, the training of correctional staff and jail policies and procedures. I have served since 1993 as a consultant and instructor for national seminars presented by the American Jail Association and as a Technical Assistance provider for the National Institute of Corrections - U.S. Department of Justice. I researched and authored a large part of the curriculum used by the Ohio Peace Officer Training Council to certify corrections officers, supervisors and jail administrators in Ohio. I am a co-author of the <u>Ohio Jail Administrator's Handbook</u> in conjunction with the Ohio Bureau of Adult Detention, which is a manual created to assist new jail administrators and is based on nationally recognized corrections standards and practices, state and federal statutes and current case law.

I have also served since 2002 as an Adjunct Instructor of Criminal Justice in the College of Evening and Continuing Education at the University of Cincinnati teaching undergraduate courses in corrections.

## OVERVIEW OF CASE

Ms. Brenda Smith was arrested on April 27, 2007 on a parole violation and brought to the Lenawee County (Michigan) Jail. Jail records indicate she was processed into the jail and she provided information to jail staff about her medical conditions. The investigative reports indicate that jail staff observed Ms. Smith begin to exhibit the obvious signs of alcohol withdrawal on the afternoon of April 29, 2007. Jail supervisors placed her in an observation cell because of her unusual and bizarre behaviors and monitored her using a video camera. At approximately 2100 hours on April 29, 2007, Sgt Paul Dye contacted the jail physician, Dr. Jeffrey Stickney, and described Ms. Smith's bizarre, strange and irrational behavior. Dr. Stickney stated that the nurse would follow up in the morning. The jail records indicate that her

2

condition continued to deteriorate throughout the evening and it was noted that video observation of the cell ceased at 0919 hours. No further calls were made to the jail physician concerning the deteriorating condition of Ms. Smith. The jail records indicate that a parole officer, Thomas Moore, observed Ms. Smith in her cell at approximately 0918 hours face down on the bench "loudly moaning". Parole Officer Moore had come to the jail to serve papers on Ms. Smith but after his observations and discussions with jail staff, he left the facility without serving the papers. The video surveillance was initiated again by jail staff at 0950 hours and they noted Ms. Smith was slumped over and not moving. Officers entered her cell and found her unresponsive and she was transported to the Bixby Medical Center where she was pronounced dead.

The facts in this case indicate that Lenawee County Health Department contracts with Dr. Jeffrey Stickney to provide off-site medical services for inmates housed at the Lenawee County Jail. Inmates needing physician services are transported to his/her office, after a telephone consultation. The jail also provides a Blue Cross/Blue Shield policy for each inmate and 18.5 hours of part-time nursing care per week at the facility.

## DISCUSSION OF ISSUES AND OPINIONS

I reviewed this case using my training, education and 29 years of practical experience and contemporary corrections industry standards and practices including the <u>Performance-Based Standards for Adult Local Detention Facilities</u> (4th Edition; June 2004) promulgated by the American Correctional Association and the <u>Standards for Health Services in Jails</u> promulgated by the National Commission on Correctional Health Care (2003).

Correctional facilities are required to provide prisoners with the basic necessities of life. The fact of being in jail or prison does not mean that human essentials can be taken away. Medical treatment has always been considered an essential to survival.

Clearly established corrections industry practices and standards require every jail facility to provide adequate medical assessment and care for all inmates in their charge. The denial of such medical care would in essence "punish" the inmate for having a serious medical condition. The ignoring or failing to take corrective action for an inmate's serious medical condition would amount to "deliberate indifference" to the health and safety of the inmate. The key for corrections staff is that once the serious medical condition is known, or the condition is so "obvious", the staff have a duty to provide adequate medical assessment and care to the inmate.

An inmate suffering from the symptoms of alcohol or drug withdrawal has become a very common medical issue for today's correctional facilities. Unfortunately, inadequately treated alcohol and drug withdrawal symptoms have also been shown to contribute to deaths among newly incarcerated individuals. The facts in this case indicate that Lenawee County admits it had no written policy, standards or protocols on the management of symptoms of alcohol withdrawal or "delirium tremens". Based upon my education, training and experience it is truly shocking to the conscious that a government agency operating a jail facility would not provide this basic level of protection for the inmates in their charge.

3

The failure of Lenawee County (Michigan) Jail, Sheriff Lawrence Richardson, Jr. and the jail administration to have a policy or procedure to direct staff in the care of inmates exhibiting acute chemical intoxication and withdrawal violates the <u>Performance-Based Standards for Adult Local Detention Facilities</u> (4th Edition; June 2004) promulgated by the American Correctional Association (ACA), specifically the mandatory standards on Detoxification 4-ALDF-4C-36 and Referrals 4-ALDF-4E-30:

> 4-ALDF-4C-36: "Detoxification is done only under medical supervision in accordance with local state and federal laws. Detoxification from alcohol, opiates, hypnotics, other stimulants, and sedative hypnotic drugs is conducted under medical supervision when performed at the facility or is conducted in a hospital or community detoxification center. Specific guidelines are followed for the treatment and observation of individuals manifesting mild or moderate symptoms of intoxication or withdrawal from alcohol and other drugs. Inmates experiencing severe, life threatening intoxication or withdrawal are transferred under appropriate security conditions to a facility where specialized care is available."

> 4-ALDF-4E-30: "Inmates who need health care beyond the resources available in the facility, as determined by the responsible physician, are transferred under appropriate security provisions to a facility where such care is on call or available 24 hours per day. A written list of referral sources includes emergency and routine care. The list is reviewed and updated annually"

The practices exhibited in this case by the Lenawee County Sheriff's Department, Sheriff Lawrence Richardson and the jail administration also violate the essential Standard J-G-06 of *Standards for Health Care Services in Jails - 2003* from the <u>National Commission on Correctional Health Care (NCCHC)</u>. The Commission is very clear on how to supervise inmates suffering from alcohol withdrawal, they require:

> "As a precaution, severe withdrawal syndromes must never be managed outside of a hospital. Deaths from acute intoxication or severe withdrawal have occurred in correctional institutions. In deciding the level of symptoms that can be managed safely at the facility, the responsible physician must take into account the level of medical supervision that is available at all times."

Based upon my training, education and experience it is inexcusable after being put on notice by a written memo from Jail Commander Dennis Steenrod on April 2, 2007, that nothing was immediately done by Lenawee County, Michigan and Sheriff Lawrence Richardson, Jr. to ensure the safety of all inmates and their access to adequate medical care. Mr. Steenrod stated, "I have determined that we currently provide inadequate health care to inmates at an exceptionally high cost". Instead of ensuring the inmates had adequate health care it seems the efforts of the Sheriff and Undersheriff were directed at "diligently requesting the release of inmates that are costly from a medical standpoint" as stated in the Lenawee County Commission Meeting minutes of April 10, 2007. This "release" philosophy ignores the duty of the Sheriff and his administration to provide adequate medical care to all inmates and only

4

"passes the buck" for the costly cases to the local community's health care system. Lenawee County, Michigan and Sheriff Lawrence Richardson, Jr. had a duty to take corrective action immediately, once a serious problem with their inmate health system became known. They chose to do nothing about their inmate health care delivery system and wait for a new medical provider to take over on June 1, 2007.

The policies, procedures and practices exhibited in this case by the Lenawee County (Michigan) Jail, Sheriff Lawrence Richardson, Jr., the jail administration and its staff are in violation of the <u>Performance-Based Standards for Adult Local Detention Facilities</u> (4th Edition; June 2004) promulgated by the American Correctional Association (ACA) and the <u>Standards for Health Care Services in Jails - 2003</u> from the National Commission on Correctional Health Care (NCCHC). Specifically, ACA Performance Standard 4C and NCCHC Standards J-A-01 and J-A-02 which require:

> ACA Standard 4C: "Inmates have unimpeded access to a continuum of health care services so that their health care needs, including prevention and health education, are met in a timely and efficient manner."
>
> NCCHC Standard J-A-01: "Inmates have *access to care* to meet their serious medical, dental and mental health needs."
>
> NCCHC Standard J-A-02: "The facility has a designated health authority responsible for *health care* services."

The delay by Lenawee County, Michigan and Sheriff Lawrence Richardson, Jr. in immediately addressing the serious inadequacies of the inmate health care system (as detailed by the April 2, 2007 memo of Jail Commander Dennis Steenrod) jeopardized the safety of the jail inmates and violates ACA Performance Standards 1A (Protection from injury and illness) and 2A (Protection from Harm) which require:

> ACA Standard 1A: "Staff, volunteers, contractors, and inmates are protected from injury and illness in the workplace."
>
> ACA Standard 2A: "The community, staff, volunteers, contractors, and inmates are protected from harm. The number and severity of events are minimized."

In order to understand the reasoning behind my opinions #2 and #3 listed at the beginning of this report, you must understand what constitutes "deliberate indifference". There is no one universal definition of deliberate indifference. It is a subjective term that can have many different meanings depending on the facts of each individual case. It does however have certain components on which all courts agree:

- *It means something more than making an honest mistake.* If it included making an honest mistake, it would not be deliberate! The U.S. Supreme Court has specifically rejected the notion that it is the same as making an honest mistake. Making an honest mistake means that you either failed to do something you should have done, or that you did something wrong, but not intentionally.

5

- It requires some kind of state of mind on the part of the defendant(s). The defendant(s) had the time and opportunity to consider their action or lack thereof, and then acted or failed to act *with knowledge* of what was going on. It usually involves a "choice" made by the defendant's from among various alternatives.

Based upon my training, education and experience I will now analyze the actions and/or inaction of the defendants using the two standards set up by the U.S. Supreme Court for a constitutional claim of failure to provide adequate medical care:

First standard:

1. *WAS THE MEDICAL CONDITION SERIOUS?*

Answer: **YES** - The court has made it clear that a condition is constitutionally serious if failure to provide treatment could result in further problems/ deterioration of previous conditions, or results in unnecessary and wanton infliction of pain. It is obvious, even to the lay person, that inmate Brenda Smith had a serious medical condition. She notified staff that she had a history of seizures and alcohol abuse during her intake processing. She exhibited obvious signs of alcohol withdrawal during her incarceration.

Second standard:

2. *DID DEFENDANTS ACT WITH A CULPABLE STATE OF MIND?*

In other words, did the defendant know and disregard a risk to the prisoner's health or safety? Did the defendant(s) have personal knowledge of a serious medical problem? Did the defendants fail to take appropriate corrective action?

After reviewing the documents and facts supplied to me in this case, I have to answer **"yes"** to all the above questions as it relates to the inaction of the jail staff assigned to supervise and care for Brenda Smith up to the time she was discovered unresponsive in her cell on the morning of April 30, 2007.

In this case, there were sufficient facts and circumstances which should have alerted those responsible for the custody of Brenda Smith of her serious medical needs. Sgt. Mary Neal contacted Dr. Jeffrey Stickney on 4/27/09 and described in detail the medical condition and behavior of Ms. Smith, but she failed to follow-up as her condition deteriorated over the next two days. Sgt. Paul Dye contacted Dr. Stickney on 4/29/09 to further describe the condition and behavior of Ms. Smith, but as her condition continued to worsen, he also took no further action.

The jail staff was either personally aware or the risks were so obvious, that they made a **choice** to deny and delay adequate medical assessment based upon their recorded observations of Ms. Smith's condition and behavior. Official's knowledge of a substantial risk to an inmate's health can be inferred by the very fact it was "obvious".

6

Officials cannot ignore or refuse to acknowledge or verify inmate conditions by "refusing to get involved" and verify the obvious serious health condition of inmate Brenda Smith. It was the duty of the jail staff to get involved when the symptoms of a serious health risk were so obvious.

The facts indicate that the staff knew Inmate Brenda Smith was an alcoholic and took various medications for other conditions including seizures. The observations described by staff should have indicated to any adequately trained corrections officer that Ms. Smith was in acute medical distress and in need of immediate medical attention. It is also clear that the failure of the Lenawee County Jail staff to call for medical attention allowed Ms. Smith's condition to dramatically deteriorate, subjecting the inmate to unnecessary pain and suffering and eventually death. Because there was no on-site medical staff available at this time, medical aid should have been summoned to the facility **or** Ms. Smith should have been transported to a hospital. The staff did neither, and Ms. Smith's condition continued to deteriorate as confirmed by a video surveillance and in person observations.

It should be noted that the behavior of Parole Officer Thomas Moore exhibited a callous and reckless disregard for the health and safety of Ms. Smith. Mr. Moore witnessed firsthand the serious medical condition of Ms. Smith and he made the choice to not get involved and he left the jail facility without making any attempt to update jail supervisory staff of his observations concerning Ms. Smith serious condition.

*Therefore, based upon my training, education and experience the conduct of the administration and staff of Lenawee County Jail and Sheriff Lawrence Richardson, Jr. indicated a continuing, on-going disregard of the serious risks to Ms. Smith's health and safety. Their failure to take appropriate action indicated "deliberate indifference" to the prisoner's serious medical needs and violates clearly established corrections industry practices and standards.*

It is a fundamental standard of conduct recognized by jails nationwide that **immediate action is required by staff** when they become aware of a serious medical issue or emergency. ACA Standard 4-ALDF-4D-24 requires:

4-ALDF-4D-24: "Correctional and health care personnel are trained to respond to health-related situations with-in a four-minute response time. The training program is conducted on an annual basis and is established by the responsible health authority in cooperation with the facility or program administrator and includes instruction on the following:
- Recognition of signs and symptoms, and knowledge of action that is required in potential emergency situations
- Administration of basic first aid/CPR
- Methods of obtaining assistance
- Signs and symptoms of mental illness, violent behavior, and acute chemical intoxication and withdrawal
- Procedures for patient transfers to appropriate medical facilities or health care providers
- Suicide intervention

7

The serious health conditions of Ms. Smith were so obvious it leaves me with two possible conclusions. First, the jail staff saw her conditions and chose to ignore them, or the staff suffers from a serious lack of training and direction. The medical information received from Ms. Smith, or observed by jail staff was either deliberately ignored by the staff or there is clear basic lack of training in the recognition of medical/mental health problems.

On the issue of failure to train, the lack of follow-through or action by the Lenawee County Jail staff is so closely related to the pain and suffering experienced by Ms. Smith, that it could be said the inaction of the jail staff was caused by the deficiency of their training. Training in the recognition of medical problems is a necessary component of any credible corrections officer training program and as stated above is required by contemporary corrections industry standards and practices.

I agree with Jail Commander Dennis Steenrod when he states that "medically untrained corrections officers forced to make medical judgments 21.4 hours a day" and "Untrained corrections officers administering and dispensing medications in addition to corrections officer duties" are an inadequate way of ensuring prompt and adequate medical care for inmates at the Lenawee County Jail. The practice of using untrained corrections officers to make initial medical assessments and referrals to nurse or doctor violates the ACA MANDATORY standard 4-ALDF-4E-19, which requires:

> 4-ALDF-4E-19: "Intake medical screening for inmates commences upon the inmate's arrival at the facility and is performed by health-trained or qualified health care personnel."

Based on my experience, training and education Lenawee County and Sheriff Lawrence Richardson, Jr. knew to a moral certainty the need for training their jail staff in the recognition of serious health risks. They were put on notice by their own Jail Commander and they had settled previous lawsuits where the lack of adequate medical care and failure to train were issues.

Medical care is one of the most sensitive and important obligations a Sheriff and his jail staff have towards their inmates. The right to medical care is not subject to being restricted for security, staffing or financial concerns. Inmates must be able to obtain timely access to qualified medical providers and receive appropriate medical treatment. In this case, Ms. Brenda Smith was denied adequate medical care after jail officials received actual knowledge of her serious medical conditions. The failure of jail staff to take corrective action resulted in a delay that resulted in Ms. Smith's conditions worsening and subjecting her to unnecessary pain and suffering, and eventually death.

In summary, the duty of the Lenawee County, Michigan, Sheriff Lawrence Richardson, Jr. and his staff was to take reasonable steps to protect Brenda Smith from harm and provide her with adequate medical care while she was in custody. They failed on both counts.

**In this case, Brenda Smith was denied access to adequate medical care at the time it was most critical for treatment of her life-threatening alcohol withdrawal symptoms.**

Should you wish further information or clarification on issues discussed in this report, don't hesitate to contact me. Again, I reserve to right to update and modify my opinions after further review and if additional information or materials become available during discovery.

Sincerely,

Jeff Eiser

cc: file – Ken Finegood/Lenawee County Jail

**APPENDIX A**

## LIST OF DOCUMENTS AND MATERIALS REVIEWED
(As of December 8, 2009)

RE: <u>Brenda Sue Smith, deceased, et al. v. County of Lenawee, et al.</u>
United States District Court for the Eastern District of Michigan – Southern Division
Case No: 09-cv-10648

1. Plaintiff's Complaint and demand for a Jury Trial filed 2/20/09.
2. Lenawee County Jail Inter-Office Memorandum dated April 2, 2007 and minutes of the Lenawee County Commission dated April 10, 2007.
3. Autopsy report for Brenda Smith.
4. Certificate of Death and Supplemental Report for Pending Certificate of Death for Brenda Smith.
5. Transcription of Telephone Call between Sgt. Paul Dye and Doctor Jeffrey Stickney, D.O. on 4/29/07 at 9:13pm regarding Brenda Smith.
6. Death investigation Report of Lenawee County Sheriff's Office Regarding Brenda Smith.
7. Lenawee County Jail records for inmate Brenda Smith for 4/27-30/07.
8. Answer of Defendant Lenawee County to Plaintiff's First Request for Admissions.
9. Defendant Dr. Jeffrey Stickney's Answers to Plaintiff's request for Admissions.
10. Defendant Dr. Jeffrey Stickney's Answers to Plaintiff's Interrogatories.
11. Contract between Dr. Jeffrey Stickney and Lenawee County Health Department.
12. CV of Dr. Jeffrey Stickney.
13. Expert report of Edna A. Wilson RN, BSN, CCN/M concerning inmate Brenda Smith.
14. CD video of Brenda Smith in Lenawee County Observation cell.
15. Autopsy photos of Brenda Smith
16. Photos of Brenda Smith's cell.
17. Lenawee County Jail Policies and Procedures:
    a. Lenawee County Sheriff's Office and Jail Organizational Charts
    b. Lenawee County Jail Chain of Command
    c. Policy 4.5.1.1    Medical Staffing
    d. Policy 4.5.3.1    Inmate Doctor Visits
    e. Policy 4.5.3.2    Emergency Care
    f. Policy 4.5.6      Medication (Pharmaceuticals)
    g. Policy 4.5.6.1    Medication (Over-the-Counter Medication)
    h. Policy 4.5.6.2    Administering Medication
    i. Policy 4.5.8.1    Out-of-House Medical Appointments
    j. Policy 4.6.1      Substance Abuse
    k. Policy 1.4.1      Staff Training/Supervision
    l. Policy 1.5.1      Offender Records
    m. Policy 1.6.3      In-Custody Deaths
    n. Policy 1.6.5      Jail Division Log Book
    o. Policy 3.1.16     Cell Checks
    p. Policy 3.3.1      Offender Discipline

    q. Policy 3.4.4.1    Self Destructive Inmates
    r. Policy 3.4.4.2    Inmates with Sensitive Cases
    s. Policy 4.1.1      Offender and Admissions Procedure
    t. Policy 4.1.5      Female Inmates
    u. Policy 4.2.1      Classification System
    v. Policy 4.2.2      Initial Classification
    w. Policy 4.2.3     Primary Classification
    x. Policy 4.5.7      Psychiatric Visits

18. Disciplinary Records of Sgt. Paul Dye regarding in-custody death of inmate Yolanda Flores in December, 2006.
19. Bixby Medical Center Records for Brenda Smith dated 4/30/07.
20. Audio CDs containing:
    a. Telephone call from Sgt. Mary Neal to Dr. Jeffrey Stickney on 4/27/09 during Brenda Smith's booking process.
    b. Telephone call from Sgt. Paul Dye to Dr. Jeffrey Stickney on 4/29/09 concerning condition and behavior of Brenda Smith.
    c. Inmate Brenda Smith personal phone calls from Lenawee County Jail on 4/27/07 and 4/29/07.

APPENDIX B

# LIST OF CASES WHERE *JEFF EISER* WAS RETAINED AS AN EXPERT WITNESS IN LAST 4 YEARS:

1. Brenda Sue Smith, deceased, et al. v. County of Lenawee, et al.
   United States District Court for the Eastern District of Michigan – Southern Division
   Case No: 09-cv-10648
   FOR PLAINTIFF

2. Karen Steele v. Warrensville Heights Police Department, et al.
   Cuyahoga County, Ohio Court of Common Pleas
   Case No: 689880
   FOR DEFENDANT

3. Aaron Cofield v. State of Maryland, et al.
   Circuit Court for Baltimore City
   Case No: 24-C-09-001502-OT
   FOR PLAINTIFF

4. Dean Proper v. Crawford County Correctional Facility, et al.
   United States District Court for Western District of Pennsylvania
   Case No: 06-279 ERIE
   FOR DEFENDANT

5. Lawrence Thomas v. Cumberland County Correctional Facility, et al.
   United States District Court for the District of New Jersey
   Case No: 1:09-CV-01323 JBS-JS
   FOR PLAINTIFF

6. AMBAT, et al. v. City and County of San Francisco, et al.
   United States District Court for the Northern District of California
   Case No: C-07-03622 SI (consolidated with C-08-2406 SI)
   FOR DEFENDANT

7. Loera, et al. v. AKAL Security, Inc. et al.
   Superior Court of the State of California for the County of Imperial
   Case No: ECU03022
   FOR PLAINTIFF

8. Estate of Timothy Trickle et al. v. Billy Bryant,
   Sheriff of Lee County, North Carolina et al.
   State of North Carolina - In the General Court of Justice
   Harnett County - Superior Court Division
   Case No: 08-CVS-448
   FOR DEFENDANT

9. Janice Chasten v. State of Oklahoma, Eric Franklin, et al.
   United States District Court for the Western District of Oklahoma
   Case No: 5-09-CV-509-HE
   FOR PLAINTIFF

10. Jessie Hendricks v. Rutherford County, Tennessee, et al.
    United States District Court for the Middle District of Tennessee
    Nashville Division
    Case No: 3:08-CV-00648
    FOR PLAINTIFF

11. Jason Eugene Waggener v. Macoupin County, Illinois, et al.
    United States District Court for the Central District of Illinois – Springfield Division
    Case No: 3:08-CV-03166
    FOR PLAINTIFF

12. Estate of Jordan v. Moore County
    State of North Carolina - In the General Court of Justice
    Moore County - Superior Court Division
    Case No: 08 CVS 432
    FOR DEFENDANT

13. Valentina Dyshko, et al. v. Timothy A. Swanson, et al.
    United States District Court for the Northern District of Ohio - Eastern Division
    Case No: 5:08-CV-00587
    FOR DEFENDANT

14. Robin Sexton v. Kenton County Detention Center, et al.
    United States District Court for the Eastern District of Kentucky
    Northern Division at Covington
    Case No: 5:07-CV-00130
    FOR DEFENDANT

15. Robin Robinson v. Kenton County Detention Center, et al.
    United States District Court for the Eastern District of Kentucky
    Northern Division at Covington
    Case No: 5:07-CV-00163
    FOR DEFENDANT

16. Mark D. McCullaugh v. Office of the Executive Summit County, Ohio et al.
    United States District Court for the Northern District of Ohio - Eastern Division
    Case No: 5:07-CV-2341
    FOR DEFENDANT

17. Hope Steffey, et al. v. Timothy A. Swanson, et al.
    United States District Court for the Northern District of Ohio - Eastern Division
    Case No: 5:07-CV-03226
    FOR DEFENDANT

18. Robert L. Small v. David Owens, et al.
    United States District Court for the District of New Jersey
    Camden County
    Case No: 06-1363
    FOR DEFENDANT

United States District Court for the Western District of Kentucky at Louisville
Case. No: 3:06-CV-516-H
FOR PLAINTIFF

20. Dana Y. Johnson v. Sydney A. Causey, Sheriff of New Hanover County, et al.
State of North Carolina - In the General Court of Justice
New Hanover County - Superior Court Division
Case No: 06 CVS 5151
FOR PLAINTIFF

21. Ophila Ann Trout, et al. v. Prentiss County, Mississippi et al.
United States District Court for the Northern District of Mississippi - Eastern Division
Case No: 1:06 CV 314-M-D
FOR DEFENDANT

22. Walker v. David D. Henderson, et al.
United States District Court -District of Alaska
Case No. A05-0176 CV
FOR PLAINTIFF

23. Jane Doe Attorney, et al. v. City of Middletown, et al.
U.S. District Court for the Southern District of Ohio, Western Division;
Case No.: 1:05 CV 672
FOR DEFENDANT

24. Barbee v. Jefferson County, Steve Richmond, et al.
United States District Court for the Western District of Washington at Tacoma
Case No. C05 - 5005RBL
FOR PLAINTIFF

25. Tina Black, et al. vs. Franklin County, Kentucky et al.
United States District Court
Eastern District of Kentucky at Frankfort
Civil Action No. 3:05-18-JMH
FOR DEFENDANT

26. Kimberly Hurst v. LFUCG, et al.
U.S. District Court
Eastern District of Kentucky at Lexington
Case No. 05-214-JBC
FOR DEFENDANT

27. Hullenbaugh v. Sheriff Tom Maurer, et al.
United States District Court for the Northern District of Ohio - Eastern Division
Case No. 5:05 CV 207
FOR DEFENDANT

APPENDIX C

LIST OF BOOKS OR PUBLICATIONS (as of July 2009):

1.  Co-Author of <u>Ohio Jail Administrator's Handbook</u> in conjunction with the Bureau of Adult Detention – Ohio Department of Rehabilitation and Correction (2008).

# APPENDIX D

Fee schedule for Jeff Eiser (as of June 1, 2009):

- RETAINER: $1000  (Payable by client at the start of case, the first seven hours of work are deducted from this retainer)

- HOURLY RATE FOR READING AND REVIEWING DOCUMENTS:  $150 per hour

- HOURLY RATE FOR DESIGNING, RESEARCHING, EDITING AND WRITING A REPORT/POSITION PAPER:  $150 per hour

- RATE FOR TESTIFYING IN A DEPOSITION:  $1200 per day

- RATE FOR TESTIFYING IN COURT PROCEEDING/HEARING:  $1000 per day ($800 per day waiting on-site without testifying).

- RATE FOR SITE VISIT AND ANALYSIS: $800 per day/visit (travel time to/from site and analysis)

- TRAVEL EXPENSES: REIMBURSEMENT FOR MILEAGE (@ current IRS rate per mile), ACTUAL COST OF LODGING, AIRLINE TICKET (if applicable), LOCAL TRANSPORTATION COSTS (rental car, shuttle, etc.) AND MEALS PER DIEM OF $50.