UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUETTA SMITH, as Personal
Representative of the Estate of
BRENDA SUE SMITH, Deceased,

                                           Case No. 09-10648

                       Plaintiff,                 Honorable David M. Lawson

COUNTY OF LENAWEE, SERGEANT
PAUL DYE, SERGEANT J. CRAIG,
OFFICER WENDY VANDERPOOL,
BERNICE BAKER, OFFICER ADAM
ONDROVICK, ERIC WESTGATE,
and JEFFREY STICKNEY, D.O.,

                       Defendants,

_____/

### OPINION AND ORDER GRANTING AND DENYING MOTIONS
### *IN LIMINE* BY DEFENDANT JEFFREY STICKNEY, D.O.

Before the Court are motions *in limine* filed by defendant Jeffrey Stickney, D.O. to preclude

the plaintiff from offering at trial certain testimony of jail procedures expert Jeff Eiser, medical

expert Joseph Goldenson, M.D., and certain transcripts of recorded conversations between Dr.

Stickney and jail personnel concerning the plaintiff's decedent, Brenda Sue Smith. The plaintiff has

filed answers in opposition to the motions. The Court has reviewed the motion papers and finds that

the relevant law and facts have been set forth and that oral argument will not aid in the disposition

of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted.

*See* E.D. Mich. LR 7.1(f)(2).

A.  Joseph Goldenson, M.D.

Defendant Stickney contends that Dr. Goldenson is not qualified to render an opinion on the

quality of Stickney's medical care because Goldenson does not share the same medical specialty as

Stickney.  In support of that argument, the defendant cites Michigan Compiled Laws § 600.2169,

a statute regulating the admissibility of expert testimony in state court medical malpractice trials.

> As this Court has explained previously, a
>
> state statute does not govern the admissibility of expert testimony in federal courts. The Federal Rules of Evidence govern those decisions.  In fact, "the federal rules themselves provide that they 'apply generally to civil actions and proceedings.' Fed. R. Evid. 1101(b).  Further, th[e Sixth Circuit] has categorically stated that '[t]he admissibility of expert testimony is a matter of federal, rather than state, procedure.'" *Legg v. Chopra*, 286 F.3d 286, 290 (6th Cir. 2002) (quoting *Brooks v. Am. Broad. Cos.*, 999 F.2d 167, 173 (6th Cir. 1993)).

*Paeth v. Worth Township*, 705 F. Supp. 2d 753, 772 (E.D. Mich. 2010).  Michigan law would not

apply to the plaintiff's federal claim against Dr. Stickney, which is based on 42 U.S.C. § 1983.

The defendant argues that when state law furnishes the rules for decision, state court witness

competency rules must be applied in federal courts.  The defendant is correct on that point of law.

*See* Fed. R. Evid. 601 ("[I]n civil actions and proceedings, with respect to an element of a claim or

defense as to which State law supplies the rule of decision, the competency of a witness shall be

determined in accordance with State law.").  The Sixth Circuit has applied that rule to state expert

witness statutes in medical malpractice cases.  *See Legg*, 286 F.3d at 290.  However, the Michigan

statute cited by the defendant limits its own application to "an action alleging medical malpractice."

Mich. Comp. Laws § 600.2169(1).  However, the state law claim in Count 2 of the complaint alleges

gross negligence against the defendant as a government actor and is not a malpractice claim.  *See,*

*e.g., Hagopian v. Smith*, No. 05-74025, 2008 WL 3539256, at *5 (E.D. Mich. Aug. 12, 2008)

(refusing to characterize the plaintiff's claims as sounding in medical malpractice and casting them

as alleging violations of constitutional rights); *Beedle v. Doane*, No. 05-70430, 2005 WL 1345527,

at *4-5 (E.D. Mich. May 12, 2005) (distinguishing medical malpractice claim from a claim under

the governmental tort liability law, and observing that "[t]here is nothing in the language of either the GTLA or § 600.2169 *et seq*. providing that the notice of intent to sue and affidavit of merit requirements of the latter apply to a gross negligence claim brought under the former by an inmate"). Therefore, section 600.2169 does not apply.

## B. Jeff Eiser

Dr. Stickney also argues that witness Eiser should not be able to offer testimony critical of Dr. Stickney's failure to develop protocols, policies, or procedures to deal with inmates suffering from drug or alcohol withdrawal. The defendant reasons that although Eiser may be a criminal justice expert, he has no medical training or other specialized knowledge in the treatment of alcohol withdrawal and no experience with administration of jails. Consequently, the defendant concludes, the witness is not qualified to criticize any conduct of Dr. Stickney as it pertains to this case.

Any challenge to expert testimony must begin with Rule 702 of the Federal Rules of Evidence, which was modified in December 2000 to reflect the Supreme Court's emphasis in *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), on the trial court's gate-keeping obligation to conduct a preliminary assessment of relevance and reliability whenever a witness testifies to an opinion based on specialized knowledge. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The language added by the amendment to Rule 702 restates *Daubert*'s insistence on the requirements that an expert's opinion be based on a foundation grounded in the actual facts of the

2:09-cv-10648-DML-MJH   Doc # 140   Filed 03/28/11   Pg 4 of 9   Pg ID 3204

case, that the opinion is valid according to the discipline that furnished the base of special

knowledge, and that the expert appropriately "fits" the facts of the case into the theories and methods

he or she espouses. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591-93 (1993).

In addition, expert testimony is not admissible unless it will be helpful to the fact finder.

Expert testimony is unhelpful when it is unreliable or irrelevant, as the Court observed in *Daubert*,

*see id.* at 591-92, and when it merely deals with a proposition that is not beyond the ken of common

knowledge, *see, e.g., Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994) ("If everyone

knows this, then we do not need an expert because the testimony will not 'assist the trier of fact to

understand the evidence or to determine a fact in issue.'" (quoting Fed. R. Evid. 702)).  Finally,

before an expert may give an opinion, the witness must be qualified to do so. *See id.* at 1348-50;

*Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir. 1998).  The proponent of expert

testimony must establish all the foundational elements of admissibility by a preponderance of proof.

*Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at

592 n.10).

An opinion is "reliable" from an evidentiary standpoint if it is "valid" according to the

discipline upon which it is based. *See Daubert*, 509 U.S. at 590.  In determining validity, the

Court's focus is on principles and methodology, not results.  And there is no precise formula by

which a court might deem a methodology acceptable or unacceptable. *Daubert* and its progeny have

therefore not created a "straitjacket," *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001), but rather

counsel a flexible approach, reconciling the "liberal thrust" of Rule 702, which "relax[es] the

traditional barriers to opinion testimony" with the responsibility to "screen[ ] such evidence" in

-4-

order to keep unreliable or invalid opinions from the jury. *Daubert*, 509 U.S. at 588-89; *see also*

*Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000).

      The expert's qualification is a separate but related inquiry. It is "separate" because the

proponent of the testimony is obliged to demonstrate the facets of the witness' background that

makes his knowledge "specialized," that is, beyond the scope of the ordinary juror. *See De Jager*

*Const., Inc. v. Schleininger*, 938 F.Supp. 446, 449 (W.D. Mich. 1996). It is "related" because the

qualifications must be relevant to the opinion sought. As the court explained in *Berry v. City of*

*Detroit*:

> [I]f one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical
> engineer might be a helpful witness. Since flight principles have some universality,
> the expert could apply general principles to the case of the bumblebee . . . even if he
> had never seen a bumblebee. . . . On the other hand, if one wanted to prove that
> bumblebees always take off into the wind, a beekeeper with no scientific training at
> all might be an acceptable witness if a proper foundation were laid for his
> conclusions.

25 F.3d at 1349-50.

      Thus, although a degree may be helpful in determining qualifications, since valid

assumptions safely may be drawn from the general training one receives on the way to a diploma,

*see id.* at 1349, it is neither a necessary nor sufficient condition for qualification as an expert,

because the expert's education must be relevant to the opinion, and qualification may be based on

knowledge, skill, experience or training as well. *See* Rule 702. As the Sixth Circuit has noted:

> Rule 702 should be broadly interpreted on the basis of whether the use of expert
> testimony will assist the trier of fact. The fact that a proffered expert may be
> unfamiliar with pertinent statutory definitions or standards is not grounds for
> disqualification. Such lack of familiarity affects the witness' *credibility*, not his
> qualifications to testify.

*Morales*, 151 F.3d at 516 (quoting *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 919 (6th Cir. 1984)).  The court's investigation of qualifications should not be onerous or inordinately exacting, but rather must look to underlying competence, not labels.  "[T]he expert need not have complete knowledge about the field in question, and need not be certain.  He need only be able to aid the jury in resolving a relevant issue."  *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 850 (6th Cir. 1981).  Similarly, lack of hands-on experience is not fatal to a qualification inquiry if the focus of the opinion is within the scope of the expert's special knowledge.  *See Jahn*, 233 F.3d at 389.

In this case, Jeff Eiser has hands-on experience.  He was the deputy director of corrections for the Hamilton County Sheriff's Office in Cincinnati, Ohio for several years and has coauthored the *Ohio Jail Administrator's Handbook*.  He is not a medical doctor and does not appear to have had any formal medical training.  However, as a jail administrator, he likely had experience dealing with the provision of medical care to inmates.  The defendant focuses on the witness's lack of an advanced college degree as a defect in his qualifications.  The lack of a degree is not *per se* disqualifying, however.  *Mannino*, 650 F.2d at 850.  The defendant also contends that Eiser's failure to visit the Lenawee County jail facility deprives him of a sufficient factual basis to give his conclusions on whether the jail's custom and practice in providing (or failing to provide) medical care to inmates indicates deliberate indifference.  However, Eiser has had access to the jail's written policies and procedures and the testimony and reports of the witnesses in the case.  His view of those policies and practices, when viewed through the lens of his experience as a jail administrator, could help the jury "understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.

The defendant also argues that Mr. Eiser is not qualified to render opinions on the quality of medical care rendered or withheld by Sr. Stickney.  The defendant is correct that the witness has

no expertise on the practice of medicine or the treatment of patients.  However, the Court does not read Eiser's report or deposition to suggest an intention to comment on those issues.

### C.  Transcripts of jail recorded telephone conversations

During the decedent's stay in the Lenawee County jail, jail personnel telephoned Dr. Stickney on two occasions.  Both conversations were recorded.  Plaintiff's counsel had transcriptions made of those recordings.  The defendant contends the transcripts are not admissible in evidence, citing Federal Rule of Evidence 1002, the "original writings rule."

There is some merit to the defendant's motion, although not based on the grounds he cites. The Original Writings Rule stated in Federal Rules of Evidence 1002 through 1004 comes into play when a party seeks to prove the contents of a writing, recording, photograph, or other similar item of real evidence.  *See* Fed. R. Evid. 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.").  The plaintiff would not offer the tape recording or transcript into evidence to prove its contents.  Instead, it would be offered to corroborate the conversation that occurred.  The Original Writings Rule (or Best Evidence Rule, as it is sometimes called) has no application in such circumstances.  *See United States v. Martin*, 920 F.2d 393, 397 n.3 (6th Cir. 1990) (observing that "Fed. R. Evid. 1002 is not relevant to this situation. . . . The intention here is not to prove the content of a recording but rather to corroborate a conversation which the government claims to have occurred"); *see also United States v. Branham*, 97 F.3d 835, 853 (6th Cir. 1996).

That does not mean that the transcripts of the conversation are admissible as trial exhibits, however.  The admissibility of tape recordings and transcripts of tape recordings at trial rests within

the sound discretion of the trial court. *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983). It is well established that the relevant evidence is the tape recordings themselves, that the transcripts are not primary evidence, and that transcripts are only intended as an aid to the fact finder. *See United States v. Wilkinson*, 53 F.3d 757, 761-62 (6th Cir. 1995); *United States v. Reed*, 647 F.2d 678, 688 (6th Cir. 1981). "The concern is that, [al]though the transcript is not admitted as evidence, where the tape contains significant inaudible portions, the jury's reliance on the transcript, in effect, transforms it into evidence." *Wilkinson*, 53 F.3d at 761-62 (citing *Robinson*, 707 F.2d at 878). Therefore, "[w]here a party seeks to use a transcript at trial, the ideal means of testing the transcript's accuracy is to have the parties stipulate to a transcript." *Ibid.* However, if the parties dispute the contents of a tape, "'the second best method is for the trial court to make a pretrial determination of accuracy by reading the transcript against the tapes.'" *Robinson*, 707 F.2d at 878 (quoting *United States v. Slade*, 627 F.2d 293, 302 (D.C. Cir. 1980)).

The plaintiff, therefore, may attempt to reconcile the disparities between the recordings and a proposed transcript, if there are any. The transcripts themselves will not be allowed as exhibits, although they may be displayed to the jury as an aid. An appropriate jury instruction will be given. The defendant may lodge an appropriate objection before transcripts are shown to the jury or recordings are played. However, it is not appropriate to bar the use of the transcripts at the present time. Therefore, the motion *in limine* will be denied.

Conclusion

The Court finds no basis to exclude the testimony of Joseph Goldenson, M.D. at the present time. The defendant has not established that the proposed testimony of Jeff Eiser as inadmissible at this time, either. Of course, the plaintiff must lay a proper foundation before she elicits opinion testimony from her witnesses at trial, and the defendant may lodge an appropriate objection if he believes the foundation is lacking. The transcripts of the tape recordings will not be received as exhibits at trial, but they may be shown as an aid to the jury when the recordings are played, provided an appropriate foundation is laid.

Accordingly, it is **ORDERED** that the defendant's motions *in limine* to exclude the testimony of Jeff Eiser and Joseph Goldenson, M.D. [dkt. #82, 83] are **DENIED without prejudice**. This is not a definitive ruling.

It is further **ORDERED** that the defendant's motions *in limine* to exclude transcripts of recorded conversations between Dr. Stickney and jail personnel [dkt. # 125] is **GRANTED IN PART AND DENIED IN PART**. This is not a definitive ruling.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 28, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 28, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---